# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY RAY COYLE,<br><br>　　　　　　　　　　　Plaintiff,<br>vs.<br>VANESSA RIVERA, et al.,<br>　　　　　　　　　　　Defendants. | **CASE NO. 09-CV-2713 H (WMc)**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

On October 29, 2010, Defendants T. Catlett, H. Drake, G. Janda, and W. Price filed a motion to dismiss the Second Amended Complaint. (Doc. No. 24.) The Court, pursuant to its discretion under Local Rule 7.1(d)(1), determined this matter to be appropriate for resolution without oral argument and submitted it on the parties' papers. (Doc. No. 25.) On November 15, 2010, Plaintiff Jeffrey Ray Coyle filed his response in opposition to Defendants' motion. (Doc. No. 27.) To date, the Court has not received a reply in support of Defendants' motion to dismiss. For the following reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's Eighth Amendment failure to protect claim, DENIES Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim, and DENIES Defendants' motion to dismiss Plaintiff's Eighth Amendment claim for inhumane conditions of confinement.

///

///

**BACKGROUND**

On December 2, 2009, Plaintiff Jeffrey Ray Coyle ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against officials at Calipatria State Prison. (Doc. No. 1.) On August 31, 2010, Plaintiff filed his Second Amended Complaint ("SAC") against Defendants Rivera, Drake, Janda, Price, Catlett and Ochoa, alleging causes of action for: (1) retaliation in violation of First Amendment; (2) Eighth Amendment failure to protect claim; and (3) Eighth Amendment claim for inhumane conditions of confinement. (Doc. No. 22.) Plaintiff alleges he was housed in a general population unit of Calipatria State Prison from May 2002 to July 3, 2008. (Doc. No. 22 at 4.) Plaintiff alleges that on July 3, 2008, he was placed in administrative segregation in retaliation for Plaintiff filing grievances against prison officials. (Id. ¶ 4, 12.) Plaintiff alleges that he was confined to administrative segregation for seven months. (Id. ¶ 19.) Plaintiff alleges that Defendants failed to protect him by housing him with prisoners who were in administrative segregation for disciplinary reasons, which resulted in an inmate attacking Plaintiff. (Id. ¶ 20-28.) Plaintiff also alleges that by placing Plaintiff in administrative segregation, Defendants deprived him of outdoor exercise for approximately four months. (Id. ¶¶ 24, 38.)

**DISCUSSION**

**I. Legal Standard**

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Lazy Y. Ranch v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 554. A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly,

550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 554 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004)).

Generally, factual allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Thus, complaints drafted by inmates proceeding pro se "must be held to less stringent standards than formal pleadings drafted by lawyers," as the Supreme Court has reaffirmed since Twombly. See Erickson v. Pardus, 551 U.S. 89, 94, (2007) (per curiam); Hebbe v. Pliler, --- F.3d ----, 2010 WL 4673711 at *3 (9th Cir. Nov. 19, 2010). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim. Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir.1996); see Twombly, 550 U.S. at 555.

## II. First Amendment Claim for Retaliation

To sue prison officials for First Amendment retaliation under section 1983, Plaintiff must satisfy five elements: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). Prisoners have a First Amendment right to petition the government through prison grievance procedures. Id. at 567. The Court evaluates a claim for retaliation in light of the deference that must be accorded to prison officials. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Plaintiff must establish a link between the exercise of his constitutional rights and the allegedly retaliatory action. Id. at 807. Plaintiff also "bears the burden of pleading . . . the absence of legitimate correctional goals for the conduct of which he complains." Id. at 806.

Plaintiff alleges that on April 24, 2008, Plaintiff filed a grievance against prison staff for misconduct and conspiracy. (SAC ¶ 13.) Plaintiff alleges that on July 3, 2008, Defendant Drake retaliated against Plaintiff by placing him in administrative segregation because Plaintiff filed a grievance against prison officials. (SAC ¶ 4.) The SAC alleges that although

Defendant Drake claimed that the reason for placing Plaintiff in administrative segregation was based on confidential information regarding Plaintiff having a family member employed at the prison, Drake's actions did not reasonably advance a legitimate correctional goal, because the confidential information was false. (Id. ¶¶ 5-6.) Plaintiff also alleges that on July 10, 2008, the prison classification committee upheld the decision to place Plaintiff in administrative segregation. (Id. ¶ 12.) Plaintiff alleges that Defendants Ochoa, Price and Janda were part of the classification committee and had knowledge of the ongoing investigation related to the grievance filed by Plaintiff. (Id. ¶ 13.) Plaintiff alleges that he was confined to administrative segregation for seven months. (Id. ¶ 19.)

Defendants' motion to dismiss argues that Plaintiff fails to state a claim for retaliation, because Plaintiff fails to establish that his protected conduct was the motivating factor behind Defendants' conduct. (Doc. No. 24-1 at 5.) Defendants argue that Plaintiff was transferred to administrative segregation because the wife of Plaintiff's former brother-in-law became employed at the prison in June 2008. (Id.) Thus, Defendants argue that retaliation was not the motivating factor behind Defendant Drake's decision to place Plaintiff in administrative segregation. This argument is better suited to a motion for summary judgment. Here, Plaintiff has sufficiently alleged that he was placed in administrative segregation because of his protected conduct.

Defendants also argue that Plaintiff fails to allege that their actions had a chilling effect on him. (Id. at 6.) However, such an allegation is not required. "[A]t the pleading stage, we have never required a litigant, per impossible, to demonstrate a total chilling of his First Amendment rights to file grievances and to pursue civil rights litigation in order to perfect a retaliation claim." Rhodes, 408 F.3d at 568. The test for whether official conduct had a chilling effect is objective. "[T]he proper First Amendment inquiry asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'" Rhodes, 408 F.3d at 568 (quoting Mendocino Envtl. Ctr. v. Mendocino Cnty, 192 F.3d 1283, 1300 (9th Cir.2000)). Consequently, a prisoner alleging a First Amendment retaliation claim "does not have to demonstrate that his speech was 'actually inhibited or

1  suppressed.'" Rhodes, 408 F.3d at 569 (quoting Mendocino Envtl. Ctr., 192 F.3d at 1300).
2  Plaintiff has alleged sufficient facts to demonstrate that a person of ordinary firmness could
3  be silenced in a situation such as that alleged here. Accordingly, the Court DENIES
4  Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim.

5  **III. Eighth Amendment Claim for Failure to Protect**

6  Plaintiff alleges Defendants acted with deliberate indifference to Plaintiff's safety in
7  violation of his Eighth Amendment right to be free from cruel and unusual punishment when
8  on October 1, 2008 Defendants failed to protect Plaintiff from an attack by another inmate.
9  (SAC ¶¶ 20.) Plaintiff alleges he was housed in administrative segregation unit A-5, which
10 had a high rate of inmate assaults, and that this was known to Defendants. (Id. ¶ 21.) Plaintiff
11 alleges that unit A-5 housed inmates removed from general population for serious disciplinary
12 problems such as staff assaults, weapons charges, assault on other inmates, and rioting. (Id.
13 ¶ 22.)

14 Prison officials have a duty to take reasonable steps to protect inmates from physical
15 abuse. See Farmer v. Brennan, 511 U.S. 825, 833 (1994); Hearns v. Terhune, 413 F.3d 1036,
16 1040 (9th Cir. 2005). To allege an Eighth Amendment violation for failure to protect, the
17 prisoner must establish that prison officials were "deliberately indifferen[t]" to serious threats
18 to the inmate's safety. See Farmer, 511 U.S. at 834. To demonstrate that a prison official was
19 deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that
20 "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official
21 must both be aware of facts from which the inference could be drawn that a substantial risk of
22 serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837;
23 Gibson v. Cnty. of Washoe, Nev., 290 F.3d 1175, 1187–88 (9th Cir. 2002); Jeffers v. Gomez,
24 267 F.3d 895, 913 (9th Cir. 2001) (per curiam). To prove knowledge of the risk, however, the
25 prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be
26 sufficient to establish knowledge. See Farmer, 511 U.S. at 842. Prison officials may,
27 however, avoid liability by presenting evidence that they lacked knowledge of the risk. See
28 id. at 844; Gibson, 290 F.3d at 1187–88.

Here, Plaintiff fails to allege that any Defendant knew of a risk to Plaintiff's safety. Plaintiff alleges that Defendants knew of the history of inmate assaults in administrative segregation unit A-5. (SAC ¶ 21.) However, these allegations do not rise to a claim for failure to protect. Prison settings are "always potentially dangerous," and "mere suspicion that an attack will occur" is insufficient to show that prison officials were deliberately indifferent to serious threats to the inmate's safety. Berg v. Kincheloe, 794 F.2d 457, 459-61 (9th Cir. 1986). Because Plaintiff has not alleged that any Defendant consciously disregarded an excessive risk to his health or safety, he has failed to state an Eighth Amendment claim for failure to protect. See Farmer, 511 U.S. at 834. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's Eighth Amendment claim for failure to protect.

**IV. Eighth Amendment Claim for Inhumane Conditions of Confinement**

Plaintiff alleges Defendants Janda, Price and Catlett subjected him to inhumane conditions of confinement while he was housed in administrative segregation because he was denied outdoor exercise for more than four months from October 1, 2008 until February 5, 2009. (SAC ¶¶ 24, 44.) Plaintiff alleges that the deprivation caused Plaintiff stress, anxiety, depression, headaches and muscle cramps. (Id. ¶ 24.)

An inmate seeking to prove an Eighth Amendment violation must "objectively show that he was deprived of something 'sufficiently serious,'" and "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009) (quoting Farmer, 511 U.S. at 834). "[O]rdinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation" for Eighth Amendment purposes. LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993). A prohibition on outdoor exercise of six weeks is a "sufficiently serious" deprivation to support an Eighth Amendment claim. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (en banc); Allen v. Sakai, 48 F.3d at 1086. After the Court determines that an individual has shown objectively that he was deprived of something sufficiently serious, the court must consider whether the risk to the inmate was sufficiently obvious to the prison officials that they must have been aware of the severity of the deprivation. Thomas v. Ponder, 611 F.3d 1144,

1150 (9th Cir. 2010). This second step of showing deliberate indifference involves a two part inquiry: first, the inmate must show that the prison officials were aware of a "substantial risk of serious harm" to an inmate's health or safety. Id. (quoting Farmer, 511 U.S. at 837). This part of our inquiry is satisfied if plaintiff shows that the risk posed by the deprivation is obvious. Id. Second, the inmate must show that the prison officials had no "reasonable" justification for the deprivation, in spite of that risk. Id.

In order to allege that the risk to Plaintiff's health was sufficiently obvious to Defendants, Plaintiff need not show that "an individual prison official had specific knowledge that harsh treatment of a particular inmate, in particular circumstances, would have a certain outcome." Thomas, 611 F.3d at 1151. Rather, whether the risk was obvious is measured in light of reason and the basic general knowledge that a prison official may be presumed to have obtained regarding the type of deprivation involved. Id. (citing Farmer, 511 U.S. at 842.) Although an inmate is required to show awareness of the risk, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. "[I]f an inmate presents evidence of very obvious and blatant circumstances indicating that the prison official knew [a substantial risk of serious harm] existed, then it is proper to infer that the official must have known of the risk." Foster v. Runnels, 554 F.3d at 814.

In their motion to dismiss, Defendants concede that Plaintiff's allegation of more than four-month deprivation of outdoor exercise satisfies the objective requirement. (Doc. No. 24-1 at 9.) Defendants argue, however, that Plaintiff cannot satisfy the subjective element of deliberate indifference by showing that Defendants Drake, Janda and Price knew of a substantial risk of harm and acted in furtherance of that knowledge. (Id. at 9-10.) Plaintiff has alleged facts that support the conclusion that Defendants Catlett, Drake, Janda and Price acted with deliberate indifference. The risk to Plaintiff's health was sufficiently obvious such that any prison official who was aware that Plaintiff was deprived of outdoor exercise for four months would have known of the obvious risk to Plaintiff's health.

The Court must also consider whether the deprivation of outdoor exercise was

reasonable. Thomas v. Ponder, 611 F.3d at 1150. Prison officials may act reasonably in depriving inmates of exercise when they respond to a "genuine emergency." Id. at 1154. Such an emergency may occur following outbreaks of extraordinary levels of violence in a prison. Norwood v. Vance, 572 F.3d 626, 631 (9th Cir. 2009) ("When violence rises to unusually high levels, prison officials can reasonably believe it is lawful to temporarily restrict outdoor exercise to help bring the violence under control.")

Defendants' motion does not address whether the deprivation was reasonable under the circumstances. Defendants concede that Plaintiff was not placed in administrative segregation unit A-5 on July 3, 2008 due to his disciplinary record.[1] Plaintiff alleged that on October 1, 2008, he was transferred to a different administrative segregation unit after being attacked by an inmate in yard group 2. (SAC ¶ 26.) Plaintiff alleged that on November 12, 2008, Defendant Catlett offered to transfer Plaintiff back to unit A-5 where he would receive outdoor exercise in yard group 2 if Plaintiff agreed to accept a cell mate. (Id. ¶ 31.) Plaintiff alleged that he refused to transfer, because he had been previously assaulted by an inmate in yard group 2. (Id. ¶ 32.) Plaintiff alleged that he remained in administrative segregation without outdoor exercise until February 5, 2009. (Id. ¶ 24.) To the extent Defendants conditioned Plaintiff's access to outdoor exercise on him agreeing to be transferred back to the yard where he had been assaulted, their actions were not reasonable, or in response to a "genuine emergency." Thomas v. Ponder, 611 F.3d at 1155 (denial of outdoor exercise for over 13 months was not reasonable where prison officials conditioned inmate's access to outdoor exercise on his signing a "pledge form" promising that he would not engage in violence while participating in prison programs). Additionally, Plaintiff's deprivation was not temporary, and Defendants did not consider whether there were any alternative means of providing him outdoor exercise. "Even where security concerns might justify a limitation on permitting a prisoner 'to mingle with the general prison population,' such concerns 'do not explain why

---

[1] Defendants contend that Plaintiff was transferred to administrative segregation because it became known that a family member of Plaintiff's ex-wife became employed at the prison in June 2008. (Doc. No. 24-1 at 5.)

other exercise arrangements [are] not made.'" Id. (quoting Spain v. Procunier, 600 F.2d 189 at 200 (9th Cir. 1979); see also Lopez, 203 F.3d at 1133 (holding that even if denying Lopez access to the general recreation yard was reasonable, "it does not explain why Lopez was not given some other opportunity for outdoor exercise."). The Court concludes that Plaintiff has sufficiently alleged a claim for inhumane conditions of confinement based on a four-month deprivation of outdoor exercise. Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's Eighth Amendment claim for inhumane conditions of confinement.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's Eighth Amendment failure to protect claim, DENIES Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim, and DENIES Defendants' motion to dismiss Plaintiff's Eighth Amendment claim for inhumane conditions of confinement. The Court directs Defendants to file an answer to Plaintiff's Second Amended Complaint on or before January 31, 2011.

**IT IS SO ORDERED.**

DATED: January 5, 2011

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT